UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WENDY BUTENSKY,<br><br>Plaintiff(s),<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>Defendant(s). | Case No. 2:16-CV-1718 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant Federal Express Corporation's ("FedEx") motion for summary judgment. (ECF Nos. 43, 47). Plaintiff Wendy Butensky filed a response (ECF Nos. 52, 53), to which FedEx replied (ECF No. 54).

**I.   Facts**

This action arises out of an employment dispute in which plaintiff Butensky alleges that her immediate supervisor, Shala-LaNice Stigler, discriminated and retaliated against her. (ECF No. 8).

Butensky, a Caucasian female, began working for FedEx in October 1994 as a part-time handler. (ECF Nos. 47, 52). Shortly thereafter, she was promoted to a courier. (*Id.*). Her primary responsibilities as a courier included delivering packages along assigned routes and filling vehicles with packages. (*Id.*). Typically, Butensky would deliver packages on four routes. (*Id.*). However, during the holiday season, which FedEx names "Peak," the number of packages for delivery sharply increases. (*Id.*). FedEx typically assists couriers during Peak season by requiring them to deliver packages to fewer routes. (*Id.*). For example, in Peak 2014 Butensky had to deliver packages on only two routes. (*Id.*).

**James C. Mahan**
**U.S. District Judge**

In August 2013, Stigler, an African American female, became Butensky's immediate supervisor. (*Id.*). Butensky and Stigler had a normal working relationship until April 14, 2014. (*Id.*). Butensky returned to work from taking a medical-related absence. (*Id.*). While inspecting her vehicle, she discovered damages along the side roofline. (*Id.*). Butensky reported the damage to Stigler, who told her that the damage had been caused by an unavoidable gate-malfunction. (*Id.*). Later that morning, when Butensky was driving on her route, a security officer by the name of Sean Shumante informed her that her replacement driver had attempted to run the community entrance gate by tailgating another vehicle. (ECF No. 52). As a result, the gate came down on the FedEx van, causing damage to both the vehicle and the gate. (*Id.*).

When Butensky returned to the FedEx station, she told Stigler what she had heard from officer Shumante. (ECF Nos. 47, 52). In response, Stigler directed Butensky away from the cameras, pointed her finger in Butensky's face, and said, "Do not say anything. Do you hear me? Do not say anything." (*Id.*). When the gate-malfunction incident initially occurred, on March 20, 2014, Stigler had reviewed a video of the incident and reported it as a "non-preventable occurrence." (ECF No. 47). Butensky's replacement driver was Charles Hooper, an African American. (ECF Nos. 47, 52).

On April 24, 2014, Stigler suspended Butensky with pay for allegedly falsifying a gas receipt. (*Id.*). After a ten (10) day investigation, Butensky was cleared of any wrongdoing. (*Id.*). Butensky alleges Stigler had concocted the investigation to send a message, which she describes as "cross Stigler and pay the consequences." (ECF No. 52). Butensky further alleges that when she returned to work, Stigler began a "campaign of intimidation and humiliation" that included taunting her in front of co-workers and making jokes about her large workload. (*Id.*). In September 2014, Butensky contacted human resources and spoke with Carla Washington about these issues with Stigler, but her efforts did not improve the situation. (*Id.*).

For the next eight (8) months no major incidents occurred between Butensky and Stigler, other than an incident where Butensky disobeyed Stigler's instructions to deliver certain packages that were missing the proper dangerous goods paperwork. (ECF Nos. 47, 52). However, Butensky

James C. Mahan
U.S. District Judge

alleges that during these eight (8) months Stigler continued to tease and humiliate her. (ECF No. 52).

In July 2015, Dion Washington, an African American courier, replaced Butensky while she was on vacation. (ECF Nos. 47, 52). On July 9, 2015, Washington drove the FedEx van down a dirt road, over a bush, and into ditch. (*Id.*). Butensky alleges that Washington later told her that he took the vehicle off-road in order to make a shortcut on his route. (ECF No. 52). Stigler reported the incident as a non-preventable occurrence. (ECF Nos. 47, 52). Butensky reported the incident to Art Lewis, who corrected the report to a preventable accidence/occurrence. (*Id.*).

In August 2015, Butensky met with Lewis to discuss Stigler's continued mistreatment of her, to which Lewis encouraged Butensky to submit her complaints to human resources. (ECF No. 52). In September 2015, Butenksy filed an internal EEO complaint against Stigler, claiming that she had been discriminated against. (ECF No. 47, 52). Butensky identified that the purported discrimination included unfair disciplinary action. (ECF No. 44). On October 21, 2015, FedEx sent Butensky a letter informing her that its investigation did not confirm her allegations of unlawful discrimination. (*Id.*).

The parties dispute whether Stigler had knowledge of Butensky's EEO complaint. (ECF Nos. 47, 52). However, in the same month that FedEx sent Butensky the letter regarding her EEO complaint, Stigler informed Butensky that she would not be receiving any assistance during Peak 2015. (ECF No. 52). In December, Butensky was given a heavier workload than her peers. On average, she had to deliver 30% more packages a day than her co-workers Anderson and Malcolm. (ECF No. 52).

On December 16, 2015, Butensky was scheduled to deliver 476 packages, which is 120 packages more than her already inflated daily average for the month of December. (ECF No. 52). Butensky asked Stigler for assistance, and Stigler offered to take off a few stops. (ECF Nos. 47, 52). However, Butensky and Sigler got into a disagreement on how her stops should be changed. (*Id.*). Butensky alleges that Stigler's proposal would have required her to work over 12 hours, again. (ECF No. 52). Butensky subsequently told Stigler that she was giving her an "early Christmas present" and walked off the job. (ECF Nos. 47, 52).

On July 20, 2016, Butensky initiated the instant action. (ECF No. 1). In her amended complaint, she alleges four causes of action: (1) retaliation in violation of the Surface Transportation Assistance Act ("STAA"); (2) race discrimination in violation of the Civil Rights Act of 1964; (3) retaliation in violation of Title VII of the Civil Rights Act of 1964; (4) Age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). (ECF No. 8).

Now, FedEx moves for summary judgment on all causes of action. (ECF Nos. 43, 47).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed

to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As a preliminary matter, Butensky concedes that there is not sufficient evidence to prove the race and age discrimination claims. (ECF No. 52). Accordingly, the court will dismiss with prejudice the second and fourth causes of action. Two causes of action remain in dispute:

retaliation in violation of STAA, 49 U.S.C. § 31105(a) and retaliation in violation of Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e-2.

Unlawful retaliation under STAA is established using the same framework that courts use to prove discrimination under Title VII. *Calmart Co. v. U.S. Dept. of Labor*, 364 F.3d 1117, 1122 (9th Cir. 2004). The court hereby simultaneously addresses both retaliation claims.

In evaluating retaliation claims under Title VII, courts use the *McDonnell Douglas* burden-shifting framework. *Hawn v. Executive Jet Mgmt., Inc.,* 615 F.3d 1151, 1156 (9th Cir. 2010); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006). Under this analysis, an employee must first establish a *prima facie* case of retaliation. *Noyes v. Kelly Servs.,* 488 F.3d 1163, 1168 (9th Cir. 2007); *see Cornwell*, 439 F.3d at 1034–35. If an employee establishes a *prima facie* case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1156. If the employer meets this burden, the employee must then raise a triable issue of material fact as to whether the employer's proffered reasons for its adverse employment action are mere pretext for unlawful retaliation. *Noyes,* 488 F.3d at 1168.

　　a. *Prima facie case*

To establish a *prima facie* case of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action. *Cornwell*, 439 F.3d at 1034–35.

　　i. *Protected activity*

Title VII provides two grounds for protected activity: the participation clause and the opposition clause. *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir. 1978). The participation clause protects "employees who utilize the tools provided by Congress to protect their rights" against practices "reasonably perceived as discrimination prohibited by Title VII." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). The opposition clause protects "employees who oppose what they reasonably perceive as discrimination." *Id*.

In September 2015, Butensky filed a formal EEO complaint within FedEx in opposition to Stigler's behavior. (ECF Nos. 47, 52). The EEO complaint was based on Stigler covering up serious violations caused by African American co-workers, suspending Butensky on baseless allegations that she falsified gas receipts, and Stigler's continuous verbal mistreatment. (ECF Nos. 44). Stigler's conduct was sufficient to allow Butensky to reasonably believe that Stigler was engaging in unlawful discrimination. Further, the EEO complaint was a formal act of opposition against Stigler's purported discrimination. Thus, Butensky has engaged in protected activity under the opposition clause.

### ii. Adverse employment action

An adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

Butensky has brought forth substantial evidence showing that Stigler had dramatically increased her workload in comparison to her usual workload during Peak season. Not only did she not receive any assistance with her routes, which she had normally received in previous years, but she was also expected to deliver 30% more packages than her co-workers. These changes materially affected Butensky's conditions of employment because it substantially increased the amount of labor FedEx expected her to perform.

### iii. Causal Link

"[C]ausation sufficient to establish the third element of the *prima facie* case may be inferred from . . . the proximity in time between the protected action and the allegedly retaliatory employment decision." *Cornwell*, 439 F.3d at 1035 (citation omitted) (italicizes added).

The month after Butensky filed the EEO complaint and the same month FedEx concluded its investigation of the EEO complaint, Stigler informed Butensky that she would not receive any assistance in Peak 2015. (ECF Nos. 47, 52). The temporal proximity between FedEx's investigation and Stigler's decision to substantially increase Butensky's workload is sufficient for a *prima facie* showing of a causal link.

Accordingly, Butensky has brought forth a *prima facie* case for retaliation.

*b. Legitimate, nondiscriminatory reason*

The burden now shifts to FedEx to provide a legitimate, nondiscriminatory reason for the adverse employment action. FedEx claims it believed that Butensky did not need additional help in Peak 2015 because FedEx pulled one of her routes, reduced the geographic size of her remaining three routes, and reassigned some of her stops. (ECF No. 47). FedEx continues that management must make daily decisions on providing assistance to couriers and did its best to provide all employees with a manageable workload. (*Id.*). FedEx, allegedly, already reduced Butensky's work and was limited in resources to provide further assistance. These are legitimate, nondiscriminatory reasons for not giving Butensky assistance during Peak 2015.

*c. Pretext*

The burden now shifts back to Butensky to raise a triable issue of material fact as to whether the defendant's proffered reasons for its adverse employment action are a mere pretext for unlawful retaliation.

Pretext may be shown either indirectly, by showing the employer's proffered explanation in unworthy of credence because it is internally inconsistent or otherwise not believable, or directly, by showing that unlawful retaliation more likely motivated the employer. *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002). Circumstantial evidence must be specific and substantial. *Id.*

FedEx's proffered explanation is misleading. Though FedEx pulled one of Butensky's routes, her overall package volume was not substantially reduced because FedEx had previously moved various delivery stops. (ECF No. 52). The delivery plan summary report provides concrete evidence that Butensky was significantly overworked in comparison to her co-workers. (*Id.*). Further, Robert Haight, one of Butensky's co-workers who did receive additional help, testified that it was "odd" when he saw that Butensky was not receiving any help during Peak 2015. (*Id.*). This evidence raises a genuine dispute of material fact as to whether FedEx's reasons for the adverse action are a pretext for retaliation.

In sum, Butensky has established a *prima facie* case for retaliation and has raised a genuine dispute of material fact regarding the legitimacy of FedEx's reason for the adverse employment

action. Accordingly, the court will not grant summary judgment on Butensky's first and third causes of action.

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that FedEx's motion for summary judgment (ECF Nos. 43, 47) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED September 7, 2018.

_____
UNITED STATES DISTRICT JUDGE